UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| SUSAN LIMOR, TRUSTEE IN ) | |
| BANKRUPTCY FOR SHARON SYKES, ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 3:05-0688 |
| v. ) | JUDGE ECHOLS |
| ) | |
| OPEN ARMS CARE CORPORATION, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM

Pending before the Court is Defendant Open Arms Care Corporation's Motion for Summary Judgment (Docket Entry No. 34), to which Plaintiff Sharon Sykes[1] responded in opposition (Docket Entry No. 45) and Defendant filed a reply (Docket Entry No. 49).

In the Second Amended Complaint, Sykes alleged that Defendant discriminated against her on the basis of disability when Defendant terminated her employment effective August 4, 2004. Sykes did not allege in the Second Amended Complaint any claim for disability discrimination under the Americans with Disabilities Act of 1990, 42 U.S.C. §§ 12101 et seq. ("the ADA"), or the Tennessee Handicap Act ("the THA"), Tenn. Code Ann. § 8-50-103 *et seq*. Rather, she alleged disability discrimination under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.* ("Title VII"), and under the Tennessee Human Rights Act, Tenn. Code Ann. § 4-21-101 *et seq.* ("THRA").

Defendant now moves for summary judgment in its favor on the ground that Title VII and the THRA do not provide a legal basis for recovery under a disability discrimination theory. Alternatively, Defendant contends that, even if Sykes' claim is construed as brought under the ADA and the THA, Sykes cannot satisfy the necessary elements of her *prima facie* case.

---

[1]Although Bankruptcy Trustee Susan Limor prosecutes this action on behalf of Sharon Sykes, who has filed a bankruptcy petition, the Court will refer to the Plaintiff as "Sykes."

1

## I. FACTS

Sykes began employment as a Program Specialist with Open Arms Care on November 17, 2003. In that capacity, she worked directly with mentally challenged clients and implemented specialized programs for those clients.

When Sykes began working at Open Arms Care, she received and reviewed the employee handbook, which included a policy on unlawful discrimination and a section detailing reasonable accommodation for individuals with disabilities. Sykes signed an acknowledgment form stating that she received and reviewed the employee handbook.

Sykes asserts that she was told during high school that she has a learning disability. This learning disability makes it hard for her to read and comprehend a written test the first time she reads the test. She also has trouble reading "big words," and if a writing has shorter, simpler words, she is better able to understand it. Sykes testified that on a day-to-day basis she thinks she functions "all right," but if there are things she does not understand, she has to be cautious. Sykes also has trouble doing math and carries a calculator with her.

When Sykes was first hired at Open Arms Care, Sykes told the Human Resources Director, Michelle Roth, that she might need assistance in learning the programs she was going to implement for clients. Roth told Sykes that Open Arms Care staff would be able to assist her if needed. Sykes would occasionally get help from Diane Daniels, Miss "Z," and Maxie Robinson, who worked with Sykes on a daily basis.

During her employment at Open Arms Care, Sykes regularly had migraine headaches. During the summer of 2004, the migraines progressed and Sykes began to suffer from seizures. She had more than one and as many as four seizures on the job. A doctor prescribed Dilantin to help moderate the seizure activity. Sykes did not make any request for an accommodation related to her migraine headaches or seizures. She claims, however, that she required accommodation for her seizures, but she did not have an opportunity to request accommodation because her employment was terminated effective August 4, 2004, shortly after she began having the seizures.

According to Sykes, the seizures have affected her daily life by slowing her thinking and her "corresponding." She has "to sit back and think" due to her seizures, and it takes her longer to follow directions. Sykes has to pace herself and be more careful because of the seizures. Sykes drives a car only when absolutely necessary because of the potential for a sudden seizure. Before working at Open Arms Care, Sykes drove a tour bus, but she was not having seizures at the time she was a tour bus driver. Because of the seizures she is no longer able to drive a tour bus.

Sykes does not take long walks anymore because she is fearful that she will fall in a ditch and no one will find her. She does not ride a bicycle anymore because she fears having a seizure while riding. She attempted to ride her bike in 2006 and crashed in her own driveway due to a seizure. Sykes chooses not to use the lawnmower for safety reasons because she must assume she could have a seizure at any time. She can still work in the yard and participate in outdoor activities as long as she paces herself.

Open Arms Care promulgated rules regarding the conduct of its employees in a policy entitled "Rules for Personal Conduct." (Docket Entry No. 37-3, Sykes Dep. Ex. 5.) Actions that are considered to be "serious" and which could result in immediate dismissal include "Any acts of disrespect, abuse and/or neglect towards the clients we serve." (Id.) "Physical Abuse" is defined as "any act or action by an employee . . . to hit, slap, push, [or] punish . . . an individual served." (Docket Entry No. 37-3 at 7, Sykes Dep. Ex. 7.) "Verbal Abuse" is defined as "any expression by an employee . . . which threatens, harasses, frightens, or humiliates an individual served." (Id.)

Sykes went through training at Open Arms Care to learn about and prevent abuse of clients. On June 9, 2004, Sykes took a training test on abuse and mistreatment. She noted as "true" that "[a]n example of a basic performance standard is speaking to all people politely, as you would like to be spoken to." All employees at Open Arms Care are required to report allegations of abuse.

On August 4, 2004, Michelle Roth, the Human Resources Director for Open Arms Care, received a report from an employee, Amber Barnes, that Sykes had engaged in mistreatment and

3

abuse of a client. Sykes' employment was terminated as a result.[2]  Pursuant to regulations, the Tennessee Division of Mental Retardation Services was notified of the allegations made against Sykes. Open Arms Care's Executive Director, Susan Irions, ordered an investigation.

The record is not clear who investigated the matter, but it appears that Roth and Sandra Haliburton, Quality Assurance Director and lead investigator for Open Arms Care, were both involved to some extent in interviewing seven witnesses. Roth, who no longer works for Open Arms Care, did not recall conducting the investigation. It is undisputed that someone at Open Arms Care interviewed Sykes regarding the allegations.

At the conclusion of the investigation, a Final Investigative Report was drafted detailing the allegations and the results of the investigation. (Docket Entry No. 37-3, Sykes Dep. Ex. 27.) The Report indicates that Haliburton and Roth were the investigators. Haliburton signed the Report and also signed Executive Director Irions' name, apparently without her authorization.

The investigation concluded that Sykes engaged in several instances of misconduct and she "verbally and physically abused and mistreated several clients in her classroom." The cited misconduct included withholding non-negotiable items (such as a Diet Coke or a mirror) or using such items as rewards, slapping a client's hands together in a forceful manner, raising her voice in a disrespectful manner to clients, using profanity and smoking in front of clients, calling a client a "bad boy" when he messed up his pants, pressing a client's head down on a table, yanking or pulling a client's arm when encouraging the client to go outside, calling a client "nasty" in front of that client, mimicking or mocking a client, and failing to assist in the brushing of clients' teeth. The

---

[2]In response to Defendant's statement of undisputed fact ¶ 49: "Sykes was immediately suspended from work while the allegations were investigated[,]" Sykes stated, "Undisputed."

Later, in response to statement of undisputed fact ¶ 58: "Upon conclusion of the investigation, Sykes was terminated[,]" Sykes responded: "Disputed as Plaintiff was terminated on August 4, 2004, prior to any suspension." Sykes gave a similar response to statement of undisputed fact ¶ 59. Yet, Sykes responded "Undisputed" to statement of material fact ¶ 60: "The termination was communicated to Sykes in a letter dated August 10, 2004."

Despite these inconsistencies in Sykes' own responses, the Court on summary judgment will assume as true that Sykes' employment was terminated on the ground of misconduct on August 4, 2004, and that Defendant relied on the subsequent investigation to confirm the basis for her firing.

4

investigation concluded that Sykes violated both Open Arms Care policy and the Department of Mental Retardation Services Policy. During her deposition, Sykes denied that she engaged in any abuse of clients.

Sykes filed a lawsuit in state court alleging disability discrimination under the THRA. Open Arms Care, a Georgia corporation, removed the case to federal court on the basis of diversity jurisdiction. Sykes obtained a right-to-sue letter from the Equal Employment Opportunity Commission ("EEOC") and then amended her federal complaint to assert a disability discrimination claim. Thereafter, Sykes' attorney died and Sykes obtained new counsel. Sykes amended her complaint a second time to reflect the Bankruptcy Trustee's role in the litigation, but she did not otherwise amend the substance of the complaint.

## II. STANDARD OF REVIEW

In ruling on a motion for summary judgment, this Court must construe the evidence produced in the light most favorable to the non-moving party, drawing all justifiable inferences in his or her favor. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). A party may obtain summary judgment if the evidentiary material on file shows "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party bears the burden of satisfying the court that the standards of Rule 56 have been met. See Martin v. Kelley, 803 F.2d 236, 239 n.4 (6th Cir. 1986). The ultimate question to be addressed is whether there exists any genuine issue of material fact that is disputed. See Anderson, 477 U.S. at 248. If so, summary judgment dismissal is inappropriate.

To defeat a properly supported motion for summary judgment, an adverse party "must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party." Fed. R. Civ. P. 56(e). The nonmoving party's burden of providing specific facts demonstrating that there remains a genuine issue for trial is triggered once the moving party "show[s] – that is, point[s] out to the district court – that there is an absence of evidence to support the nonmoving party's case." Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986).

5

## III. ANALYSIS

### A. Title VII and THRA

Open Arms Care correctly contends that Title VII and the employment-related portion of the THRA do not cover a disability discrimination claim. See Clark v. City of Dublin, 178 Fed.Appx. 522, 524 (6th Cir. 2006); Williamson v. Hartmann Luggage Co., 34 F.Supp.2d 1056, 1063 (M.D. Tenn. 1998); Perlberg v. Brencor Asset Mgt., Inc., 63 S.W.3d 390, 394 (Tenn. Ct. App. 2001). Therefore, Sykes' claims as pled must fail.

### B. ADA and THA

Even construing Sykes' complaint liberally and evaluating her disability discrimination claim under the ADA and the THA,[3] Sykes cannot overcome the pending motion for summary judgment.

The ADA provides that "[n]o covered entity shall discriminate against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). To make out a *prima facie* employment discrimination case under the ADA, Sykes must show (1) that she is an individual with a disability, (2) who was otherwise qualified to perform a job's requirements, with or without reasonable accommodation, and (3) who was discriminated against solely because of the disability. See Mahon v. Crowell, 295 F.3d 585, 589 (6th Cir. 2002).

A threshold question is whether a claimant is disabled within the meaning of the ADA. To be "disabled" for purposes of the ADA, an individual must (1) have a physical or mental impairment which "substantially limits" her in at least one "major life activity," (2) have a record of such an impairment, or (3) be regarded as having such an impairment. See 42 U.S.C. § 12102(2). The term

---

[3]The THA works in conjunction with the THRA to grant an individual a civil cause of action for wrongful discrimination based upon a handicap. See Tenn. Code Ann. § 8-50-103(b)(1)-(2); Tenn. Code Ann. § 4-21-311. THA claims are analyzed similarly to ADA claims. See Perlberg, 63 S.W.3d at 394-395; Barnes v. Goodyear Tire & Rubber Co., 48 S.W.3d 698 (Tenn. 2000) (holding litigant must show she was qualified for position, she was disabled, and she suffered an adverse employment action because of the disability).

6

"substantially limits" means the disability affects activity to a considerable or large degree. Toyota Motor Mfg., Kentucky, Inc. v. Williams, 534 U.S. 184, 122 S. Ct. 681, 691 (2002). Major life activities are of central importance to daily life and include caring for one's self, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working. 29 C.F.R. § 1630.2(i); Workman v. Frito Lay, Inc., 165 F.3d 460, 467 (6th Cir. 1999). These terms are to be interpreted strictly to create a demanding standard for a person to qualify as "disabled." Williams, 122 S.Ct. at 689. There is no blanket rule for determining when a claimant is disabled. "Congress intended the existence of a disability to be determined in . . . a case-by-case manner." Id. at 692. The determination as to whether an individual is substantially impaired in a major life activity is made as of the time that the adverse employment decision was made. Kocsis v. Multi-Care Mgt., Inc., 97 F.3d 876, 884 (6th Cir. 1996).

If the plaintiff establishes a *prima facie* case of disability discrimination, then the burden of production shifts to the employer to set forth a legitimate, non-discriminatory reason for the adverse employment action it took against the plaintiff. Kocsis, 97 F.3d at 883. If the employer carries its burden, the plaintiff must then prove by a preponderance of the evidence that the employer's proffered reason was not the true reason, but was merely a pretext for illegal discrimination. Id. The plaintiff can accomplish this if she presents evidence showing the proffered reason had no basis in fact, the proffered reason did not actually motivate the adverse employment action, or the reason given was insufficient to motivate the employer's action. See Manzer v. Diamond Shamrock Chemicals Co., 29 F.3d 1078, 1083-84 (6th Cir. 1994).

    *1. Learning disability*

With regard to her learning disability, Sykes fails to meet the first element of her *prima facie* case. She has not produced evidence that, at the time her employment was terminated on August 4, 2004, she was substantially limited in at least one major life activity by her learning disability. See Kocsis, 97 F.3d at 884; Wong v. Regents of Univ. of California, 410 F.3d 1052, 1066 (9th Cir. 2005) (affirming summary judgment for defendant where plaintiff with learning disability involving slow

7

reading and comprehension failed to present evidence that he was substantially limited in his ability to read for purposes of daily living or as compared to what is important in daily life of most people). Sykes testified that she thought she did "all right" on a daily basis, and she did not produce any evidence to the contrary. In fact, Sykes does not even mention her learning disability in her memorandum in opposition to the summary judgment motion. Thus, it appears that Sykes abandoned any disability discrimination claim based on her learning disability. In any event, Sykes has not produced sufficient evidence to create a triable issue of fact on whether her learning disability substantially limited at least one major life activity.

*2. Seizures*

Open Arms Care contends that Sykes is not a qualified individual with a disability and therefore cannot prove her *prima facie* case. Sykes testified that her seizure disorder impacted her daily life. One of the major changes she experienced was her inability to drive, particularly because in the past she was able to drive a tour bus. Courts have held, however, that an inability to drive due to a seizure disorder does not qualify an individual as disabled under the ADA. See Chenoweth v. Hillsborough County, 250 F.3d 1328, 1329 (11th Cir. 2001) (noting "driving" is not only absent from the statutory list of major life activities, but driving is "conspicuously different in character from the activities that are listed."); Colwell v. Suffolk County Police Dept., 158 F.3d 635, 643 (2nd Cir. 1998) (driving is not a major life activity); Robinson v. Lockheed Martin Corp., 212 Fed.Appx. 121 (3rd Cir. 2007) (unpublished) (same).

Sykes also testified that she no longer rides a bicycle, uses a lawnmower, or takes long walks, but she can still work in the yard and participate in outdoor activities if she paces herself. This is not sufficient to prove that Sykes is substantially limited in the major daily life activities of caring for herself, performing manual tasks, seeing, hearing, speaking, breathing, or learning. 29 C.F.R. § 1630.2(i). At most, her limitations implicate the major life activities of walking and working. But Sykes has not produced sufficient evidence from which a jury could reasonably find that the nature and severity of Sykes' seizure disorder and its impact significantly restricts her ability

to walk as compared with an average person in the general population. See Black v. Roadway Express, Inc., 297 F.3d 445, 451 (6th Cir. 2002); Penny v. United Parcel Serv., 128 F.3d 408, 415 (6th Cir. 1997). If moderate difficulty or pain experienced while walking does not rise to the level of a disability, a reasonable factfinder could not determine that Sykes' fear of having a seizure sufficiently affects her ability to walk to rise to the level of a disability. See Black, 297 F.3d at 451. "The word 'substantial' thus clearly precludes impairments that interfere in only a minor way with the performance of manual tasks from qualifying as disabilities." Toyota Motor Mfg., 534 U.S. at 197.

Sykes also has not produced evidence that, at the time of her termination on August 4, 2004, she was unable to work in a broad class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills and abilities, 29 C.F.R. § 1630.2(j)(3)(i); Burns v. Coca-Cola Enter., Inc., 222 F.3d 247, 254 (6th Cir. 2000) (and cases cited therein), nor has she produced evidence that at the time of her termination she had a record of such impairment or that Open Arms Care regarded her as having such an impairment.

Sykes reports in her brief that she "can no longer work, and worked only a short period of time in an unrelated field after her termination by Defendant." (Docket Entry No. 46, Memorandum at 7.) Sykes also states that "it is not a single job she cannot perform, but any job." (Id.) She provides a letter from Dr. Guillermo Ludi, dated in September 2006, over two years after her termination, indicating that she cannot work at any job because her seizures are not under control.

Taking Sykes at her word that she could not perform the essential functions of her job at the time of her employment termination in August 2004 or at any time thereafter, the Court can only conclude that she cannot meet the elements of her *prima facie* case. If Sykes is unable to perform the essential functions of her job with or without reasonable accommodation, then she is not a qualified individual with a disability under the ADA and her claim must fail. See Brickers v. Cleveland Bd. of Educ., 145 F.3d 846, 850 (6th Cir. 1998).

Because Sykes cannot satisfy the first two elements of her *prima facie* case, the Court need not reach the questions whether Sykes can prove that the sole reason for the termination of her

9

employment was disability discrimination, whether Open Arms Care produced evidence of a legitimate non-discriminatory reason for the termination decision or whether Sykes can show that Open Arms Care's stated reason for the termination was a pretext for disability discrimination.

## IV. CONCLUSION

For the reasons stated, Defendant Open Arms Care Corporation's Motion for Summary Judgment will be GRANTED and this case will be dismissed with prejudice.

An appropriate Order will be entered.

ROBERT L. ECHOLS
UNITED STATES DISTRICT JUDGE